We move your argument next in Hampton v. McDonough, 22-1359. Mr. Raven, whenever you're ready. Good morning. May it please the Court. Sean Raven for Selina Hampton. The Veterans Court held that under this Court's holdings in Barad and Bond, the Board of Veterans' Appeals may address evidence received within one year of a raid decision in order to find in the first instance that such evidence is neither new nor material as defined by 38 CFR 3.156B. This is a misinterpretation of 3.156B, and it's contrary to this Court's holdings in Bond, Barad, and Lange. Based on this Court's decisions, the Board does not have jurisdiction in the first instance to find that evidence received within one year of a raid decision is either new or material. The Board's jurisdiction is limited to determining whether VA received evidence within one year of a raid decision. If so, it must remand to the regional office to issue a raid decision in the first instance, and this is because of this Court's holdings in Bond, Barad, and Lange, and also because under 38 U.S.C. 7104A, a veteran is entitled to one right to appeal of any decision. On a claim. Sorry? On a claim. On a claim. Whether something is new and material, is that a claim? Yes. You have one right to a decision. Sorry. No, I'm just, I get it, the general provision that they've got a right to appeal on claims, but why is whether a specific piece of evidence, new and material, a claim? It's just additional evidence in support of a claim. But it's the right to review, it's one right to review on appeal. So the reason it's, when you file new and material evidence, it's not necessarily defined necessarily as a claim, but it's. It can be a claim, right? It's evidence in support of an existing claim. It's evidence in support of a claim, but the Board can't make that decision in the first instance because it denies the veteran the right to appeal. There's no raiding decision. So when you file a new and material evidence, this Court has held both in Bond and Barad that VA must determine it. It's not the Board that has to determine it, it's VA. Okay. Because when VA issues a decision, it gives the veteran the right to file a notice of disagreement. The regulation, is it, that uses the expression VA? Is that right? 3.156B, the regulation itself, I don't think it uses, doesn't say VA. It says, sorry, new and material evidence received prior to the expiration of the appeal period, prior to the appeal decision, if time has just been filed, will be considered as having been filed in connection with the claim, which was pending at the beginning of the appeal period. Right. So you don't find language in that that identifies which of the two organs, the agency of original jurisdiction, the RO, or the Board has to consider it, right? Right. I don't. But findings, in fact, can't be made in the first instance by the Board. When the Board sees that new evidence has been, I believe there's even a veteran's case on point, if I can submit additional after the argument, that says that when the Board identifies that VA has received evidence within one year of a decision, it has to remand to the regional office to make a finding in that first instance about whether that evidence is new and material. I mean, I would have thought if there was a case so directly on point, the Veterans Court would have applied it and we wouldn't be here. I think this is a novel issue. It might be an issue that the court has to interpret 3.156B4. I thought there was a case. It might be Evans. It might be Winters. But I'd have to check it. I'd have to find out what that was previously. Putting aside case law, is there a regulation or statute that says that, I thought you said something like the Board cannot make factual findings in the first instance? No, it can't make factual findings in the first instance. What regulation or statute? Well, I think it's 38C7104, the right to one review on appeal. But the Board is reviewing tribunals. It reviews de novo. Right, but if, as I think suggested earlier, a claim at issue is the TDIU claim, then the Board is reviewing that claim with a, let's call it, an expanded evidentiary record. Right, but the Board can't. It's my understanding that the Board can't make these findings in the first instance. That's why it goes back to the regional office. Presupposing your argument when you say the Board can't decide in the first instance where something is new and material, and that's not what 3.156 says. And 7104 is not so broad as to say that the Board can't make any kind of factual determination. Why isn't the correct rule? Because in these 3.156 cases, you already have a decision on the claim, right? That's the basis for it, that evidence that comes in can relate back to this claim, if it's submitted within a year. So presumably these cases often are already on appeal to the Board. No? I mean, let's just assume they are. Then why isn't it, if it's before the Board, the Board's obligation to look at this evidence and say, yes, it's new and material, in which case it probably does have to go back. I think the government probably agrees with that. But if it's not new and material, then there's no reason to remand it because it's not relevant to the pending claim. Well, the Board can't, in this particular case for Selina Hampton, if you look at the facts, as I recall them. Wait, I don't want to get back into the facts of this because you know we can't review facts. Why isn't that a correct statement of the law that I just made? If the Board has jurisdiction over an appeal and there's new and material evidence that had been submitted for it, in certain circumstances, I would think that the Board may be able to look and determine whether or not that's new and material evidence. But that's not how it generally has happened and that's not how I read the Court's decisions in Bond and Barad. When you talk about VA, because when you talk about VA, the regional office or the Board, the VA is generally understood as the regional office in the context of most decisions. Well, I think there's some imprecision in both the way the agencies use that decision and the way the Court uses it and the way we use it sometimes. But I take your point. But again, you want to get into the facts. Didn't, at some point, the Board and the Veterans Court find that this Board decision that denied her claim for an increase on her migraines implicitly also denied an increase in TDIU because it saw this evidence and it didn't? And that's a determination of what that later Board decision said. We can't review that, right? You can't review that. If the Board is allowed to consider whether something is new in material when the case is pending before the Board as a matter of law, then that's what happens here and you're done. You win only if 3.156 requires the RO in the instance of every single piece of evidence, an examination report, a visit to the doctor, or something that occurred from the denial of a claim for a year after. The RO has to issue a decision on every single one of those pieces of evidence and say this is new material or not. Yes, exactly. It does. And where in 3.156 does it say that? I think it's Bond and Barad. I think that when VA receives new material, when VA receives evidence, it has to examine that evidence within that one-year period to determine whether or not it's new material. Does Bond and Barad specifically say that the RO has to do it or that it has to be considered? No. Bond and Barad both use language of VA. However, if you look at the arguments used by prior counsel, we've all made the arguments about the regional office. Let me ask you a different hypothetical. Sure. You know, what if, you know, because she submitted this evidence to the RO in support of the increased migraine claim and the RO denied it. Why couldn't we view that as the RO implicitly denying that this evidence was new material for purposes of the still pending TDIU claim? Well, implicit denial has never been applied to new material evidence claims. And basically, I think if you have implicit denial applying to new material evidence claims, you basically abrogate this court's decisions in Bond and Barad. You have to have a decision. I think that was. No, but I'm not saying that just because a decision was issued after evidence that could have been new material was submitted, that you have an implicit denial. But if you have a decision that specifically addresses the evidence that was submitted, the examination report, whatever, and does it for purposes of the scheduler rating and says this doesn't warrant an increase, in those circumstances, it's not that you are assuming that they saw it and dismissed it without any recognition that it was submitted. Here they saw it, right? The RO saw this evidence and still refused an increase in the scheduler rating. So why wouldn't we implicitly assume that they also found it not new material for purposes of the TDIU? Because they saw the evidence. I grant you, if there's a case where they didn't mention the evidence at all, they'd be in trouble. But that's not this case, is it? Implicit denial is a doctrine that allows the regional office and the board to deny something without providing reasons or basis or notice or due process of law to a veteran. If you say that implicit denial can be used to deny a new material evidence claim, then every case where a decision has been made on a subsequent case on the same issue, implicitly denied that they didn't care about it. Not if they didn't specifically address the evidence. If they didn't specifically address the evidence, then they haven't shown that they've considered this evidence. But that's a key distinction, isn't it? I would disagree. I would respectfully disagree. Why? Because implicit denial, first off, I think implicit denial denies due process of law and it conflicts with There are implicit denial doctrines. I know you all would like to get rid of them altogether, but they're out there. They can be applied. The basis for them is that sometimes the board has considered stuff and implicitly they must have rejected their theory in the ways they articulated the denial for the specific evidence they addressed. Why wouldn't that reach to the same question of new material? Let's not get into the dispute about whether they looked or not. I think there are some underlying disputes here, but I want to talk about the law. If they specifically looked at the pieces of evidence that could qualify as new material, in the context of deciding her claim for an increased scheduler rating and said this isn't good enough to get you a higher rating or get you any kind of higher rating, why couldn't you assume that they also looked at it for purposes of TDIU? I don't think you can because under Barad, even if there is a decision on a subsequent claim, that doesn't extinguish the secretary's obligations under 3.156B. If a subsequent claim that's considered can't extinguish the requirements under 3.156B, then implicit denial also can't extinguish it,  Mr. Raven. If you look at Appendix 300, which is the June 23, 1999, regional office rating decision that's at stake here, at the bottom it says 18BIU not found. What does that mean? It's my understanding that this is going to be a code sheet to a rating decision. A code sheet? Doesn't it suggest that somebody looked to see if IU was there when it says not found? That would indicate that as part of the code sheet, they've determined that individual unemployability was not found. If they have looked at the two pieces of evidence that you claim they're supposed to look at to decide whether it's new material, right? Yes. And it's new. There's no question that the evidence, both the May 3 letter and the medical report, was new to the record. And it's material to the question of whether or not you're entitled to IU, TDIU, because if the ratings, if the percentage ratings got knocked up, you would be there. So I was just wondering, why isn't this showing that the RO here did exactly what you're telling them they're supposed to do? If you look on page 301, 302, 303, you see this entire rating decision. I want to explain, as I know, and VA might have a different opinion, that if you see on page 301, it says the issues that are covered in this rating decision, 1 through 4. Individual unemployability is not covered in 1 through 4. If you look at decisions. I see 1 through 4. My point is that they looked at the evidence you're talking about, the VA examination of May 27, 1999, and they clearly looked at the letter, because the letter is what asked for a service connection for hypertension. Sure, but looking at the evidence for one claim is not the same as looking for TDIU. And as I understand it on the code sheet, if you were to have a code, every rating decision has a code sheet. So that's just a spoiler claim. If you look at the basis for which you would have an IU claim, which would be that your ratings on your existing conditions have been hiked up to the right level, and they don't hike them up to the right level. I'm sorry, I don't understand the question. Entitlement to IU, when they say not found, if they had in their rating decision agreed with you that you were entitled to a higher percentage for your migraines and your urinary, you might have got up to the numbers for TDIU. Correct. And they wouldn't have said not found. But that's usually boilerplate on almost all rate decisions I've ever seen, is that even if you had increased rating for tinnitus, which is limited to 10%, they still would put IU not found, because that's sort of like it's on the template. Have you ever seen IU not found in a rating decision where the rating clearly entitled them to TDIU? Absolutely. Sure. But you would see the issue in the body of the rating decision where it says issue evidence and decision about what the issue is. But even so, again, the regulation of 3.156B requires that even if the – So I understand what you're coming over. Quite frankly, I had a lot of trouble understanding what your case is from your brief. But I gather you're saying that you want us to interpret 3.156B to say that only the IRO and under no circumstances can the board say that the evidence is not new material? In the first instance. That's correct, Your Honor. And you base that in the text of 3.156? And this court's decisions of what the court has said in broad bond. But let's just assume those decisions don't decide the specific issue. I would say that the whole scheme for VA, the whole framework, is that decisions are made by the regional office and you have the right to appeal them. If the board makes a decision in the first instance that wasn't made by the regional office, your only ability to appeal is to file an appeal to the Veterans Court. Can I ask you this question? Assume with me that if I look at the Appendix 305, which is I think your May statement requesting further review by the IRO, and that doesn't mention TDIU as I read it. It mentions the various individual things. We're matching a list of four issues that's in the June 23, 1999 IRO decision, the migraines, the UTI, the GERD, and the hypertension. Correct. Is it possible, and I don't mean theoretically or abstractly, but given the appropriate standards that you could meet TDIU standards even if everything found in this June 23 as to the four individual claims is accepted? That is only the 30% disabling migraine, et cetera. Could you still get TDIU when nothing else is above 30% disabling or even at all? Yes. Under 38 CFR 4.16B, you don't need to meet the schedule requirements of 4.16A, which are usually around 60% to 70% to have a scheduler TDIU. You can get an extra scheduler TDIU under 4.16B, but you also would see that adjudicated in the rating decision issued by a regional office. The rating decisions give notice to a claimant about what the issues are and how to appeal them. Remember, these people are pro se. These are veterans. They're pro se. She was pro se at the time of this. So even if she had help from the American Legion or the VFW, these people don't have the benefit of counsel to help them to understand that the claim for increase is also a claim for increase for TDIU. So in a pro-claimant framework that's sympathetic to veterans, that's the whole purpose of 3.156B. I think we should hear from the government and restore your rebuttal. Ms. Hampton. Thank you, Your Honor. May it please the court, the court should dismiss Ms. Hampton's appeal or alternatively affirm the veterans court's judgment. The court likes jurisdiction because the veterans court undertook no interpretation of Section 3.156B. It simply applied that section to the facts of the case. Just on the question of our jurisdiction, I mean, how could it not be the case that the veterans court decision relied necessarily, though perhaps implicitly, you know, for she kind of way on a rejection of the proposition that the other set the legal interpretation of 3.156B means what the other side says. So the veterans court impliedly rejected the argument by Ms. Hampton that the board was required. Well, actually, let me back up because I don't believe that Ms. Hampton made this argument we're hearing right now that seems to dominate the argument about the board having to review in the first instance. That's not my understanding. The RO. The RO, I'm sorry. I apologize. Okay, so that the RO. You could just say VA. VA. That will clarify everything. Right. The RO reviewing in the first instance is not an argument that I see in the, before the veterans court or in the opening brief, which is why we would argue that it is waived in the argument that the board can't review in the first instance. An argument or the can't review new and material evidence is something we disagree with. In any event, the court has explained in Disabled American Veterans, the Secretary of Veterans Affairs, that the board acts on behalf of the secretary in making the ultimate decision on claims. The one review on appeal point that Ms. Hampton's counsel has raised is one that I think the court considered when concluding that the board considers matters on appeal under a de novo standard of review, considering all the evidence and material of the record. I think a question was asked before. Suppose that the board, looking at this evidence, the May-June evidence, let's just call it, had said, obviously new, but we also think it's material. Could the board then evaluate the effect of the evidence on the underlying TDIU claim or would the board be required to remand the matter to the RO for that application to take place? I believe the board could consider the effect, especially in this case, the decision, as the court notes, there's a decision from June 1999, yet the one-year period would, after the denial of TDIU, would have run until April 2020, or 2000, I'm sorry. Given that extension of time, it makes sense that the board would also be able to consider any additional evidence. Is there authority on that, that the board can decide more than that the evidence is both new and material, but also can decide the underlying claim to which that evidence is material, even though the RO, by assumption here, has not decided that? I'm sorry, I might have misunderstood. I believe that probably would be a situation where the RO would consider that initially, but... I'm sorry, that the RO would consider it. My question is, could the board consider it initially? The it here being, what is the answer to the TDIU yay or nay question, now considering this evidence which has been determined to be new and material? Can the board decide that, or does the board have to remand it? Yes. I'm not entirely certain, but I believe that because the board can consider all of the evidence, that it could make that conclusion. And we also... Wait, can I ask you a hypothetical? Because I'm a little confused by your position here, too. If evidence is submitted after the final RO decision and during the pendency, the one-year period, and the case is at the board, and the board looks at the evidence and says, this is new and material, but we're still going to deny TDIU. How does that give the veteran two decisions on a claim? It only gives them one, doesn't it? I believe so. So in that situation, if they decide it's new and material, don't they have to send it back to the RO? And isn't that what usually happens? That seems like that probably is the case. I'm just not certain about the... I mean, I know that there's situations where a veteran can waive a right to a remand and have the board consider the evidence for the first time on appeal. But if the veteran wants a decision from the RO on a claim when there's no material evidence that's been found, wouldn't it get sent back to the RO? I believe that would probably be the case. One of the main issues is that Ms. Hampton's May 1999 statement and the June 1999 examination, which is referred to by the Board and Veterans Court as a May 27, 1999 decision, that both of them were considered by the regional office at Appendix 295 and 301 and at 300. And as Judge Clemenger noted, also the IU not found was discussed. And in the November 2000 decision, the Board definitely considered unemployability. It explained that there was a complete lack of evidence of unemployability at Appendix 275. The Board stated that... Right, I mean, the Board at some point, and I don't think there's any dispute upon this, found that this TDIU claim and this evidence that we're talking about was considered by the Board and determined not to be new material. And that's a fact finding. We can't get around that or we can't touch that. But the question still is, that doesn't help you if we require that the RO to have considered it explicitly, right? Because there's no... I don't think... Apart from this, and you can address Judge Clemenger's question, I'm sure you can. Same thing. Apart from this very vague reference to IU in this ratings decision, there's no discussion of TDIU. It's not listed as an issue. But the evidence is. So I don't know what that reference means, but assuming it doesn't actually address TDIU, then the only way you get to an argument that the RO properly addressed it is through the fact that it addressed it in terms of the scheduler rating and that we would have some kind of implicit denial rule. Yes. Generally, a claim for TDIU is part of a claim for increased rating for disability when unemployability is raised during the course of an appeal. A TDIU is a form of increased rating. And therefore, when the RO considered an increased rating claim, it came to a conclusion that there was no increased rating warranted. I guess this is... I think I want to ask you the same question. Mr. Oliver said that one can have no individual unemployability on each of four individual or three individual scheduler ratings, the migraine at 30, the GERD at whatever, and still have the possibility of a non-scheduler TDIU. So that what the RO, I guess, said on June 23rd does not, in fact, imply, entail a rejection of a TDIU claim, which was not part of the appendix page 305 may request for reconsideration. The Veterans Court concluded that the board's analysis in the November 2000 board decision was that they met the requirements of bond and brood. And it certainly considered whether the statements from April 1999 through the November 2000 board decision re-raise the issue of TDIU. That re-raise phrase is an enormous mischief in this case, because it could mean either of two things. Newly provided support for or addressed a re-asserted claim. The problem is that there's all this play on the ambiguity of that term. And it didn't have to be pressed again, did it? After the March 1990, in order for the board to be obliged, not the board, the RO, to be obliged to consider it if 3.156B means what the sentence says it means. It didn't have to be repressed, meaning the actual subject of TDIU and unemployability did not have to be mentioned again. What do you think had to happen in order for 3.156B, assuming it means that the RO has to, as an initial matter, consider this post-March evidence? What do you think, is the veteran obliged to ask for that to happen to the RO? That is, present that request to the RO? Or even if not, when it gets to the board, can the veteran say, there's this post-final decision, post-RO final decision, new evidence, it's material, you've got to send that back to the board, back to the RO? No, I don't believe that the veteran has to provide a specific statement that the May 1999 claim, evidence of that sort, which in this case did not even mention unemployability, has to be considered as long as it's within one year after the decision that's at issue. However, the board certainly did consider those questions. It did consider unemployability. Sure, but we're not talking about the board. The legal issue we have here, because there's factual findings that the board did consider this, whether it's good or not, we can't touch it. But the legal issue we have is whether, despite the board's consideration and determination that it wasn't new and material, that the RO has to independently do it, and do it in an explicit way that recognizes it and says this is not new and material. And if we find that as a matter of law, that the RO has to do it in the first instance, and that the RO's decision has to specifically address the evidence and say this is not new and material as to the TDIU claim, then you have an issue here, right? Yes, but I believe, number one, the board can consider that issue in the first instance, and number two, Ms. Hampton did not even raise this argument below or even in her opening brief. There was nothing mentioned about the board not reviewing this question of new and material evidence in the first instance, and in fact, we argue that Ms. Hampton has, in essence, conceded that the board did perform the necessary review, which she argued in her opening brief that the board had not done. This is a change in the legal basis of her argument as part of the rejected report. But can we just get to the legal argument that we've been talking about? What is the Secretary's position on whether the RO has to do this in the first instance and has to do it in an explicit way, and does our decisions in Broad and Vaughan dictate that? Where does 3.156 allow, as I think is your position, for it to be done by the board? And what's your argument for that latter point? Well, I'll start with the issue raised by Ms. Hampton about Broad. The argument that there can't be a presumption that VA considered the evidence. In Broad, there was nothing in the decision that informed Broad that his missing service records, which he contended were new and material evidence, were ever considered. What's your answer to Judge Hughes? Judge Hughes didn't ask you what Broad said. He asked you whether or not you agree or disagree with your adversary, whose proposition is that under 3.156B, it is the RO in every case that must make the determination whether proffered evidence coming in one year after the rating decision is new and material, period, and that the board can't do that. Our position is that the board can. You think the board can do that? And is that based upon the text of 3.156? It's based on the general references to the secretary, based upon the court's decision in Disabled American Veterans talking. Claire, I'm trying to get the issues in front of the court narrowed to what happened. Can the board look at a record like here, and can the board say we believe that the RO implicitly denied the TDIU? Well, here the board is looking at the November 2000 board decision. In this particular case, the 2000 board, which is the board that supposedly did the fact-finding, that board was looking at the 62399 RO decision, right? And what I'm asking is, under the law, can the board, looking at that decision, not itself make fact-findings, but simply say we are reviewing what happened at the RO, and because the RO did not increase any of the percentage ratings on the established claims, thereby getting you up to TDIU, nor did the RO make any indication that an extra scheduler rating would be appropriate by referring the matter to where it goes. The board is saying we think implicitly the RO did its job and denied a TDIU. I think the board can make that conclusion, and here the 2020 board is reviewing the 2000 board's review and its review of the evidence, and its determination that there was no unemployability. The rationale of the 2020 board is that there was an implicit denial of the TDIU, right? The 2020 board is concluding that there's an implicit denial. The board whose decision got reviewed by the CBC, which is up here, that 2020 board was looking back at a 2000 board, which was looking back at a 1999 rating decision. Correct. And one of the grounds on which your side prevailed was that there had been an implicit denial of the TDIU claim. And that was an independent ground? Well, the biggest part of your brief here was that that was an independent ground and that Mr. Raven didn't raise it, and therefore you win, but what I'm trying to get at is we know that there was not an explicit rating in the 62399 R.O. rating decision. It doesn't say we have reviewed your underlying claim for TDIU, which adheres in every decision, and we have denied it. They don't say that. So if anybody's trying to argue that there's been an implicit denial, it has to be implicit. The explicit, I think, in now, a conclusion that there was no new and material evidence has been made by the 2020 board. Can I suggest, you said that you thought that, I think you said, that you thought that Ms. Hampton in the Veterans Court did not raise to the Veterans Court a argument that the obligation of 3.156B is an obligation that must be fulfilled by the R.O., not by the board. I'm looking near the back of the appendix. I'm afraid the appendix page numbers stopped being recorded here. But on page 10, which is of Ms. Hampton's brief in the Veterans Court, which is the summary of the argument, and then exactly the same thing at page 17, she says, contrary to the board's conclusion otherwise, the issue of entitlement to a total rating based on individual employability could not have been implicitly denied in the November 2000 decision because the board did not have jurisdiction over that issue. As noted above, after the receipt of new and material evidence within one year, the March 1999 rating decision, the regional office was required to issue a new rating decision. It did not do so. Citing 3.156B, is that not the argument being made here? Well, that seems to say it in a different way, and I had not noticed that statement. A new rating decision is not, though, what we understand Ms. Hampton to have argued in her opening brief here, even if she did raise it to the Veterans Court. What does the department want us to do with this case? What's the answer? Well, we would first argue that the court should dismiss the appeal because the Veterans Court has simply applied 3.156B to the facts of the case and hasn't Well, certainly disagree with that. We think a legal issue is presented. Then, number one, Ms. Hampton did not address the alternative basis for the Veterans Court. You make an argument that there was actually a fact-finding here somewhere in the record that this particular piece of evidence were not new and material, and if that's correct, that would be the answer. We can't review that issue? Correct. Now, where in the record is that fact-finding made? Who said that the evidence is not new and material? The board, the Veterans Court concluded that the board's statement Point me in the record to the writing in which that point is made. The express fact-finding of this evidence is not new and material? Well, the Veterans Court first noted it at page 4, stating that the This is the Veterans Court decision you're talking about? Right. I'll start with the Veterans Court decision stating that contrary to the appellant's arguments that the board decision on appeal failed to discuss whether a May 1999 statement and June 1990 exam detailing increased migraine activity constituted new and material evidence under 3.156B, the board decision addressed that evidence of record and determined that statements after the April 1999 Not re-raised? Right, did not re-raise. Why does that mean that we know that there's been a fact-finding that the evidence was not new and material? The re-raised comment was raised in connection with the bifurcation point? Well, I believe it goes to both points. You believe? That's not good enough. Okay, I understand. I mean, that's not what that part says. That seems to suggest that if there was a bifurcation, that the court didn't decide whether the evidence was specifically addressed or not. Didn't need to. Right. I thought your position was that there's also an additional point in the board's decision that suggests that even if there was a bifurcation, that there's still enough to find an implicit denial. Correct. Where is that? Yeah, where is that? Well, pages appendix 27 and 28, you know, both find that at the bottom of page 27, statements after the April 1999 rating decision and before the November 2000 board decision do not re-raise the issue of TDIU. While the veteran continued to argue about some of the ratings assigned, she never specifically indicated that her migraines were so severe they render her unable to secure or follow. But that's all going to the bifurcation point. Can you, I mean, I know which, can you just get to the paragraph that we want you to get to on page 28 and tell us why you think that supports your argument? Okay. There was an implicit denial of the, if there actually was an attempt to re-raise a TDIU claim, then it was implicitly denied when a conclusion was reached when considering migraines that Ms. Hampton was not entitled to an increased rating for migraines and that she- But if we find, you're going well over your time, I just want to, if we find as a matter of law that the RO can implicitly deny a TDIU claim, this is the factual support for the notion that it did so here. But if we find as a matter of law that there can't be implicit denial for a TDIU claim, then this doesn't get you where you need to go. Except that we believe that the Board can reach that conclusion. On its own. Yes, and also that on page 27 at the top of the last paragraph, the opening sentence says the Board finds that TDIU was not part of the prior claim and even assuming that it was, that, I'll skip ahead, implicit denial of the implicit claim for a TDIU occurred. So we understand that paragraph at the bottom of appendix page 27 to cover both points, the new and material evidence and also bifurcation. You're not relying on bifurcation to prevail on this appeal? Well, the bifurcation is certainly a basis for the Board and the Veterans Court's conclusion and I believe that because TDIU was not related. How could the TDIU claim coming, the April claim, which is still alive at the time, how could it possibly be bifurcated? The April 1999 decision denied TDIU and the reason that the... Can you answer my question? How could it possibly have bifurcated? Well, the Board found it was bifurcated because, number one, the TDIU claim was based on three separate, well, three together conditions, both the migraines, UTIs, and GERD. So there were three bases for an argument that Ms. Hampton was totally unemployable, whereas her later claim was simply for migraines. So that was one basis of the Board's conclusion and our argument as well that the TDIU claim was bifurcated. Also simply the fact that she never asserted that her migraines were so severe that she was unemployable after that April 1999 denial, as well as the fact that she didn't appeal the April 1999 denial of TDIU and simply filed a new claim for migraines. Thank you very much. Thank you. Is there... I have nothing further. Can you just address this, that we do have the Veterans Court saying that the Board in 2020 found an implicit denial back in November of 2000. If two things are true, then do you lose? The two things are the Board can make that finding and two, it can do so implicitly, not expressly. As I understand your question, the Board said that the statements submitted by Ms. Hampton do not re-raise the issue of TDIU. It also made some statements about implicit denial. In 2020, it said we read November 2000 as an implicit denial of that. Put aside that unfortunate re-raise language. Okay. Ms. Hampton's position would be that implicit denial, 3.156B cannot be implicitly denied. You cannot implicitly deny what is required by regulation to be a decision. And I think that's what... Just to be clear, you're also arguing that even if the RO could implicitly deny, the Board can't. The Board can't either because you need to have that decision. It has to be recognized. There has to be something to indicate. And that's what I believe that... I'm a little confused now. And I'm not sure how I can get out of this confusion at 1.45. Are you saying that when the Board denies, knowing that there's additional evidence in front of it, and it denies a claim specifically for TDIU, but doesn't mention whether that evidence was new and material or not, that it hasn't complied with 3.156 just because it hasn't said it's new and material or not, even though they've explicitly considered it? Well, your fact pattern isn't what... No, no, no, answer my question. I don't care about the facts right now. Sure, no. In that situation, if they're deciding the same claim and the new material evidence has been received, they can go ahead and decide the claim. But 3.156 can be implicitly decided. If the RO or the Board rejects the claim you're raising and considers the evidence that's covered by 3.156, it is considered it properly under 3.156, even if it doesn't go through the steps of saying, we have this evidence, it's not new and material, or it is new and material, but we still reject the claim. If they consider the evidence and they reject the claim, they've complied with 3.156. Yes and no. Yes, they've made a decision. Let's just assume it's yes. Okay. And the Board, let's just assume the Board can do that. Your beef, I think, is that the RO shouldn't be able to do that. No, the Board shouldn't be able to do that. Well, I mean, I don't... The RO shouldn't be able to implicitly deny. The RO has to issue a decision. Just like you gave the scenario and the question was, if the Board found that there was new and material evidence, does it have to read it? But if the RO legally can implicitly deny the TDIU claim based upon this new evidence, I know you disagree with that, but let's assume we rule against you, then isn't this paragraph we're talking about on page 28 a sufficient factual finding that the RO specifically did that? Sure, absolutely. Okay. Here's my question. If an RO decision lists evidence that it's considered and the evidence hasn't previously been in the record, it's new, isn't it, as a matter of law? Yes. It's new. Yes. And if the evidence relates to a claim... A different claim. ...it's material, isn't it? Yes, correct. All right. So in this particular case, we have the two pieces of evidence you're talking about. One is explicitly referred to in the 62399 order, right? Sure. Which is the medical record. Yes, Your Honor. And so that is of necessity new and material. Yes. And anyone that said it's not, you'd reverse them, right? Yes. Okay. The second piece of evidence, which is your client's letter, was not expressly listed as evidence, right? But it obviously was considered because the claim for hypertension was denied. Correct? Correct. Yes. So is it fair to treat that letter as having been considered? Yes, that would be considered too, but... The letter was new, and it was obviously material because it was raising hypertension as well as the headaches. Yes. Right? So I would think there can't be any discussion in this case that the two pieces of evidence are not new and material. Yes, but there's more than that, more than there's just two pieces of evidence. In fact, the record shows there's, like, four pieces of evidence. There's additional medical records. But the point from Ms. Hampton is that the regional office and this Court's decisions require the regional office to explicitly make a determination, make a finding of fact and conclusion of law about whether evidence received is new material as it relates to a different claim, TDIU. So she introduced evidence or submitted evidence that was new. I understand what you want. You want an explicit finding reflected in the RO's decision. Correct. It shows you what it considered, and you want them not only to address that in terms of the increased ratings and the rating for a new disability, hypertension, but you also want them to recognize the impact, yes or no, on TDIU. Correct. And had this been to the board, had the board been deciding increased rating for migraines and noticed that there was no material that had been submitted within one year of the denial of TDIU? So if, for example, we had a case that said, or if it had been held already, that it is okay for an RO to implicitly deny, right, by looking at the record in front of them and by not increasing the rating sufficiently to trigger TDIU, nor reflecting a request for extra scheduling. The problem with that is that the SCORTULA decided under Baraud that a subsequent decision doesn't extinguish 3.156B's obligations on the Secretary. So even if a subsequent decision can't extinguish the 3.156B requirements, then implicit denial can't also, cannot also extinguish 3.156B's obligations on the Secretary. Your basic argument is that an RO can't make an implicit denial of a TDIU claim, and in connection with that, a board looking at an RO decision can't say that's what happened. Correct. All this implicit denial, it's almost like saying that the regional office can implicitly deny reopening a claim, or can implicitly find that new and material evidence wasn't raised, and that's been previously rejected. And so I would ask the Court just to impose on the Secretary the obligation to explicitly require that the regional office in the first instance issue a rating decision finding whether or not evidence submitted within one year is new and material. Thank you. Thank you. Thanks to both counsel and cases submitted.